UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RENEE A. ESHCOFF, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> Commission of the Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) | Cause No. 1:19-CV-413-HAB |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Renee A. Eshcoff's ("Eshcoff") Opening Brief in Support of Complaint to Reverse the Decision of the Commissioner of Social Security (ECF No. 13), filed on January 14, 2020. Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (ECF No. 14) on February 25, 2020. Eshcoff filed her Reply Brief (ECF No. 15) on March 10, 2020. This matter is now ripe for review.

**A.    Procedural History**

Eshcoff filed her Title II application for disability insurance benefits on March 10, 2017. The application was denied initially on June 28, 2017, and on reconsideration on September 11, 2017. On August 21, 2018, Eshcoff appeared and testified at a hearing before an administrative law judge ("ALJ").

The ALJ issued her Decision on Eshcoff's application on November 16, 2018 (the "Decision"), finding that Eshcoff was not disabled. Eshcoff filed her Request for Review of Hearing Decision to the Appeals Council on December 4, 2018, which Request was denied on

August 20, 2019. Thereafter, Eshcoff initiated this action for judicial review through the filing of her Complaint to Review Decision of Commissioner of Social Security (ECF No. 1) on September 27, 2019.

**B.     Legal Analysis**

**1.     *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion."

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support [her] conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate [her] assessment of the evidence to assure" the court that she "considered the important evidence" and to enable the court "to trace the path of her reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.    *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant

work, and (5) whether the claimant is capable of performing any work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Eshcoff had not engaged in substantial gainful activity since the alleged date of disability onset. At step two, the ALJ determined that Eshcoff had the following severe impairments: chronic fatigue syndrome ("CFS"), major depression, anxiety, unspecified hypothyroidism, and insomnia. In addition, the ALJ determined that Eshcoff had the following non-severe impairments: hypothyroidism, vitamin D deficiency, vitamin B deficiency, and Morton's neuroma.

At step three, the ALJ found that Eshcoff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. 18). The ALJ found at step four that Eshcoff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand, remember, and carry out simple instructions and tasks. She can make judgments on simple work related decisions. She can respond appropriately to interactions with coworkers, supervisors, and the general public. She can respond appropriately to usual work situations. She can deal with routine changes in a routine work setting.

(R. 20). Finally, at step five the ALJ determined that Eschoff was unable to perform any past relevant work but concluded that there were jobs that exist in significant numbers in the national economy that Eshcoff could perform. As a result, the ALJ concluded that Eshcoff was not disabled.

**3.**   *The ALJ Erred in Excluding Exertional Limitations from the RFC*

Eshcoff raises several challenges to the Decision, but the Court finds one dispositive. Despite finding that Eshcoff's CFS was a severe impairment, the ALJ ignored evidence of the physical effects of the syndrome and excluded any and all exertional limitations from Eshcoff's RFC. This exclusion was error requiring remand.

In many cases the battle over CFS is whether the claimant suffers from the syndrome at all. *See*, *e.g.*, *Mandella v. Astrue*, 820 F.Supp.2d 911, 930 (E.D. Wis. 2011). That is not the case with Eshcoff. Instead, the ALJ made an express finding that, not only did Eshcoff suffer from CFS, the CFS was a severe impairment. (R. 17). The ALJ determined, however, that Eshcoff's CFS supported only non-exertional findings. The basis for this determination was a "lack of significant objective findings on examinations throughout the period." (R. 22).

As Eshcoff notes, Social Security Ruling 14-1p (the "Ruling") provides ALJs with specific guidance for evaluating disability claims involving CFS. The Ruling describes CFS as a "systemic disorder consisting of a complex of symptoms that may vary in frequency, duration, and severity." *Id*. at 2. The Center for Disease Control defines CFS as clinically evaluated, persistent or relapsing chronic fatigue that: (1) is of new or definite onset (that is, has not been lifelong); (2) cannot be explained by another physical or mental disorder; (3) is not the result of ongoing exertion; (4) is not substantially alleviated by rest; and (5) results in substantial reduction in previous levels of occupational, educational, social, or personal activities. *Id*. at 3. In order to be diagnosed with CFS, an individual must exhibit four or more specific symptoms that persisted or recurred during 6 or more consecutive months of illness and did not pre-date the fatigue:

- Postexertional malaise lasting more than 24 hours (which may be the most common secondary symptom);

- Self-reported impairment(s) in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;

- Sore throat;

- Tender cervical or axillary lymph nodes;

- Muscle pain;

- Multi-joint pain without joint swelling or redness;

5

- Headaches of a new type, pattern, or severity; and

- Waking unrefreshed.

*Id*. Individuals suffering from CFS can additionally exhibit the following symptoms:

- Muscle weakness;

- Disturbed sleep patterns (for example, insomnia, prolonged sleeping, frequent awakenings, or vivid dreams or nightmares);

- Visual difficulties (for example, trouble focusing, impaired depth perception, severe photosensitivity, or eye pain);

- Orthostatic intolerance (for example, lightheadedness, fainting, dizziness, or increased fatigue with prolonged standing);

- Respiratory difficulties (for example, labored breathing or sudden breathlessness);

- Cardiovascular abnormalities (for example, palpitations with or without cardiac arrhythmias);

- Gastrointestinal discomfort (for example, nausea, bloating, or abdominal pain); and

- Urinary or bladder problems (for example, urinary frequency, nocturia, dysuria, or pain in the bladder region).

*Id*.

The ALJ does not mention the Ruling in the Decision. Eshcoff correctly notes that this, alone, is not a basis for remand. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). However, failure to apply the appropriate analysis from the Ruling is a basis for remand. *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987). As set forth above, the Ruling lists numerous symptoms that are either required for a finding of CFS or are often associated with the syndrome. In finding that Eshcoff suffered from CFS, the ALJ was "required" "to conclude that she suffered from the symptoms usually associated with CFS unless there was substantial evidence in the record to support a determination that she did not endure such symptoms." *Opgenorth v. Shalala*, 897

F.Supp. 1199, 1203 (E.D. Wis. 1995). Stated another way, when the ALJ found CFS to be a severe impairment, she necessarily found that Eshcoff suffered from at least some of the symptoms set forth in the Ruling and that the combined effect of the symptoms "significantly limit[ed] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

There is ample evidence in the record to support physical limitations based on Eshcoff's CFS. Eshcoff consistently reported fatigue to her treating physicians. (*See*, *e.g.*, R. 274, 287, 294, 305, 328, 329, 358–60, 364, 436, 493, 618). These reports are not purely subjective; Eshcoff has a history of elevated viral levels, including Epstein-Barr virus ("EBV"). (R. 328). EBV levels in particular are indicative of CFS. SSR 14-1p at 5.

Of note is the Physical Medical Source Statement completed by Briana Aspy, PAC, who had treated Eshcoff for four years at Parkview Physicians Group Integrative Medicine. (R. 564–67). Aspy opined that "[d]ue to chronic fatigue, focus/concentration/attention issues [Eshcoff's] physical abilities and cognitive abilities are limited in order to succeed at returning to work in her trained profession nor can she pursue new employment/training." (R. 567). Aspy further opined that Eshcoff's fatigue would require regular breaks during the workday, significant lifting/carrying and positional restrictions, and would cause Eshcoff to be off task more than 25% of the time. (R. 565–66). Aspy believed that these impairments were at least "reasonably consistent" with Eshcoff's signs, clinical findings and laboratory or test results. (R. 567).

The ALJ rhetorically hand waves Aspy's opinion away by calling it "extreme" and "unsupported by any evidence in the record." (R. 23). Ignoring for a moment that this statement is demonstrably false (Aspy's opinion is supported by Eshcoff's consistent reports of extreme fatigue and her viral load results), it wholly misses the point. The ALJ is presumably referring to objective test findings when she refers to "evidence in the record," but "[b]lind reliance on the lack of

objective findings is wholly inconsistent with the secretary's policy in [CFS] cases." *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). Indeed, the Ruling explicitly advises ALJs that "we cannot identify specific laboratory findings that are widely accepted as being associated with CFS" and "standard laboratory test results in the normal range are characteristic for many people with CFS." SSR 14-1p at 4. Even if Eshcoff had no objective findings supporting her CFS claims, that would not be a basis for rejecting the opinion of a treating medical source. *See id* at 6 ("[u]nder our regulations and SSR 06-03p, we also may consider evidence from medical sources we do not consider "acceptable medical sources" to help us evaluate the severity and functional effects of the impairment(s)").

With the ALJ purporting to require objective confirmation of Eshcoff's CFS symptoms, and then ignoring that very confirmation, it cannot be said that the ALJ built the required logical bridge between the evidence in the record and her ultimate determination. The Court finds no basis whatsoever for wholly rejecting any and all physical limitations in the RFC. The ALJ has erred, and remand is necessary.

**C.   Conclusion**

For the foregoing reasons, the Decision (R. 15–26) is REMANDED. The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on June 23, 2020.

                                                   s/ *Holly A. Brady*
                                                  JUDGE HOLLY A. BRADY
                                                  UNITED STATES DISTRICT COURT